Dylan M. McFarland
MCFARLAND MOLLOY & DUERK
283 W. Front Street, Suite 203
Missoula, Montana 59802
Telephone:   (406) 519-3122
Facsimile:    (406) 519-3123
McFarland@MissoulaLawyers.com

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| BILLY ALDRIDGE, <br><br> Plaintiff, <br><br> v. <br><br> FUTURE MOTION, INC., <br><br> Defendant. | Case No. _____ <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, Billy Aldridge ("Mr. Aldridge") and for his claim against Future Motion, Inc. ("Future Motion") states and alleges as follows:

### PARTIES

1.      Mr. Aldridge is currently and was at all times relevant to the allegations contained within his Complaint, a resident and citizen of Missoula County, Montana.

2.      Future Motion, a foreign corporation, is organized and incorporated in Delaware, with its principal office located in Santa Cruz, California.

1

3.      Future Motion is a proper party because it distributes, markets, and sells its products to consumers/users within the state of Montana, and Mr. Aldridge, a resident of Montana, and is a user harmed by Future Motion's product.

## JURISDICTION AND VENUE

4.      Plaintiff incorporates the foregoing allegations as fully restated herein.

5.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as the parties enjoy complete diversity as they are citizens of different states. Additionally, the matter in controversy exceeds $75,000.

6.      This Court has personal jurisdiction over this case and Defendant in that Defendant regularly and persistently engaged in the business of marketing distributing, advertising, and/or selling Onewheels in the State of Montana and for use by consumers in the State of Montana, and has transacted and conducted business within the State of Montana that relates to the allegations in this Complaint.

7.      Defendant expected or should have expected its acts to have consequences within the State of Montana and derived substantial revenue from interstate commerce related to Onewheels sold and used in the State of Montana.

8.      Defendant purposefully availed itself of the privilege of conducting activities within the State of Montana, thus invoking the benefits and protections of its laws.

9.    Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Missoula Division as the injuries and loss, sustained by the Plaintiff, giving rise to the claim, occurred in Missoula County, Montana.

## ALLEGATIONS COMMON TO ALL COUNTS

10.    This is a product liability action based upon causes of action under Montana Code Annotated § 27-1-719 for strict liability and negligence, seeking recovery for substantial personal injuries and damages suffered by Plaintiff.

11.    Defendant Future Motion designs, develops, manufactures, produces, distributes, markets, and sells a line of personal "riding machines" commonly referred to as "Onewheel(s)."  The Onewheel, which Defendant hails as a product that "bridge[s] recreation and transportation," is a self-balancing electric skateboard with a single wheel in the middle of the board, and front and rear footpads where the rider stands astride the wheel.

12.    There are several variations of the Onewheel including, but not limited to, Onewheel, Onewheel+, Onewheel+ XR, Onewheel Pint, Onewheel Pint X, and Onewheel GT.

13.    The Onewheel is operated, controlled, and monitored, in part, by an application ("app") that users can download and install on their phones. The app allows users to customize their ride with what the company refers to as "Digital Shaping" and allows the user to monitor battery status, toggle the LED lights on the

3

board, and track riding data.  Upon information and belief, the Onewheel application was also developed and designed by Defendant Future Motion.

14. On or about August 11, 2024, Mr. Aldridge was riding his Onewheel+ XR, in Missoula, MT, along Bunkhouse Place.

15. This section of roadway is a level surface, with minimal cracking or fatigue to the asphalt.

16. While riding, Mr. Aldridge's Onewheel+ XR suddenly and unexpectedly came to an abrupt halt, violently launching Mr. Aldridge off the device and onto the asphalt roadway.

17. As a result of the Onewheel+ XR's failure, Mr. Aldridge sustained significant injuries. These injuries include but are not limited to: concussion; injuries to face, head, neck, hand, and right elbow; and multiple abrasions and contusions. The facial trauma Mr. Aldridge sustained resulted in the need for reconstructive surgery of his nose and forehead with permanent scarring and disfigurement.

18. As a result of his injuries, Mr. Aldridge was admitted to the hospital overnight.

19. As a result of his injuries, Mr. Aldridge has undergone surgeries to repair his broken elbow and nasal cavity.  Additionally, Mr. Aldridge underwent hours of stitching to close the wound(s) on his face.

20.     On or about November 16, 2022, the Consumer Product Safety Commission ("CPSC") issued a warning urging consumers to stop using all Onewheel models that were sold since 2013, including the Onewheel+ XR model at issue in this case.

21.     On or about September 29, 2023, the CPSC again issued a warning urging consumers to stop using all Onewheel models that were sold since 2013, including the Onewheel+ XR model at issue in this case.

22.     The CPSC's investigation found that Onewheels can cause the rider to be ejected from the product, which can result in serious injury or death to the rider; just as the subject Onewheel did in this case.

23.     In its 2022 report, the CPSC stated that between 2019 and 2021, there were at least four deaths reported and multiple reports of serious injuries after the product failed to balance the rider or suddenly stopped while in motion.

24.     This failure occurs as a result of defects with one of the Onewheel's supposed safety processes, which Defendant calls "Pushback." On its website, Defendant Future Motion describes this purported "safety feature" as follows:

> Pushback is a safety feature that lets the rider know they have reached the limits of the board and that they need to lean back and slow down. During Pushback, the nose of the board will lift gradually, signaling the rider to shift their weight back to slow down. It is absolutely critical to rider safety that Pushback is always respected. Pushback is not an arbitrary speed limit that we have decided upon to hold you back. It defines the actual limit that the board can safely go based on

a number of parameters including tire pressure, rider weight, terrain, speed, charge levels, etc.

. . . .

You will also experience a Pushback warning when your Onewheel is running out of battery or in an overcharge situation (your board is charged to 100% and you go down hill, overcharging the battery). In these instances, it's important to lean back to slow down to a stop and then dismount the board.

25.    A user may additionally experience Pushback based on an "error" state. In these scenarios, the user is meant to get off the board to determine the cause of the error. Often, the device needs to be restarted to clear the error state.

26.    Defendant Future Motion asserts that the Onewheel will only nosedive – meaning the board will suddenly shut down and cause the rider to be ejected from the board – if the rider ignores or pushes through Pushback in one of the above-mentioned scenarios. However, in some cases, the Onewheel either unexpectedly shuts off during ordinary use or the Pushback notice is not noticeable to consumers, which can likewise cause the product to nosedive. The result is that the Onewheel will suddenly stop, ejecting the rider from the device and posing a serious risk of injury and death to consumers.

27.    Notably, on August 11, 2024, Mr. Aldridge did not engage in any activity which could be expected to initiate the "Pushback" safety feature. Mr. Aldridge does not and did not exceed the recommended weight; the terrain was flat and Mr. Aldridge was traveling a roadway he had traveled many times before; the

speed was a speed he was comfortable operating the board and a speed at which he had traveled many times before; the charge level at the time of the incident was 77 percent; and the tire pressure was 17 psi.

28.    Further, the board did not engage in any motion or make any sound which would indicate the "Pushback" safety feature was engaged.  It did not nose up, it simply locked into a stop.

29.    Despite the CPSC's findings and its appeals to Defendant Future Motion, Future Motion refused to agree to recall its Onewheels for approximately one year, demonstrating a disregard for the rights and safety of consumers, including Mr. Aldridge.

30.    The CPSC was so concerned for consumer safety, that on November 16, 2022, Commissioner Trumka issued a public statement specifically addressing the CPSC advisory and Future Motion's refusal to recall its deadly Onewheel skateboard. In the statement, Commissioner Trumka indicated that "CPSC asked Future Motion to stop selling the Onewheel and to advise its customers not to use this product. The company refused. Future Motion is unwilling to take appropriate action to fix a product hazard that has killed people."

31.    The Commissioner urged consumers to immediately cease all use of Onewheels, advising that "[the Onewheels] are not worth dying for."

7

32. Despite the CPSC's warnings and reports of at least four deaths, Defendant Future Motion maintains that its Onewheels are safe, claiming that the product "is safe to ride and tens of thousands of riders enjoy riding Onewheel safely everyday . . . in fact, it's probably the easiest boardsport in the world."

33. Instead of recalling and issuing a stop sale for their products, Defendant Future Motion continued to claim its products were safe and began accusing the CPSC of having ulterior motives for the recall and of trying to quash innovation.

34. In a press release issued by Future Motion on the day of CPSC warning, Future Motion calls the CPSC warning "unjustified" and "alarmist." The press release included multiple statements calling into question the CPSC's warning, a tactic that Future Motion has continued to use across social media outlets and on its podcast.

35. Defendant Future Motion attempted to reassure consumers that its products were not defective and intentionally failed to take any action to recall or stop the sale of its Onewheels until approximately September 29, 2023.

36. On September 29, 2023, approximately one year after the CPSC issued its first warning regarding the Onewheel, Defendant Future Motion agreed to a joint recall of all Onewheel electric skateboards.

37. The recall, which applied to over 300,000 units, stated that the Onewheel "can stop balancing the rider if the boards' limits are exceeded, posing a crash hazard that can result in serious injury or death."

38. At the time of the incident, Mr. Aldridge was not exceeding the limits of the board. He was using the Onewheel as he had multiple times in the past, to transport him from his home to the golf course a short distance away. He was not on a hill. The board was sufficiently charged but not overly charged. He did not exceed the weight of the board. He was traveling a route he was comfortable with at a speed at which he was comfortable operating the board.

39. Defendant Future Motion and the CPSC reported receiving "dozens of reports of incidents involving the electric skateboards, including four reported deaths between 2019 and 2021 and injuries such as traumatic brain injury, concussion, paralysis, upper-body fractures, lower-body fractures and ligament damage."

40. Consumers were instructed to immediately stop using the Onewheel, and consumers with select models were asked to download or update the Onewheel app for firmware updates which purportedly "fix" the problem by installing a function called "Haptic Buzz" – a "tactile and audible warning system that provides the rider with a buzzing sensation and sound when nearing the limits of the board or when in low battery or error states."

41.    On August 11, 2024, Mr. Aldridge did not experience, and has never experienced "Haptic Buzz" or a tactile and audible warning of any kind from the board.

42.    By reason of the forgoing acts or omissions, Plaintiff used his Onewheel with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use.

43.    Plaintiff used his Onewheel for its intended purpose as a recreational mode of transportation and did so in a manner that was reasonable and foreseeable by Defendant.

44.    Defendant's Onewheel was defectively designed and manufactured by Defendant as described above, placing the Plaintiff and similar consumers in grave danger.

45.    Defendant's statements and representations about the safety of its products are misleading and false, and place consumers, like Mr. Aldridge, at risk.

46.    Defendant knew or should have known that its Onewheels possess defects that pose a serious safety risk to Plaintiff and the public. Defendant continued to ignore and/or conceal its knowledge of these defects from the general public and actively engaged in attempts to discredit CPSC warnings and attempts to reassure the public that its products are actually safe.

47.    Defendant Future Motion continues to generate a substantial profit from the sale of its Onewheels, demonstrating a callous, reckless, willful indifference to the health, safety and welfare of Plaintiff and consumers like him.

48.    As a direct and proximate result of Defendant's intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its negligent design of its products, its failure to remove a product with such defects from the stream of commerce, its failure to stop the sale of dangerously defective products to consumers, its failure to heed CPSC warnings and requests, and its disparagement of the CPSC's investigation, Plaintiff used an unreasonably dangerous product, which resulted in significant and painful bodily injuries.

49.    Plaintiff seeks damages resulting from the use of Defendant Future Motion's Onewheel+ XR as described above, which has caused the Plaintiff to suffer serious bodily injuries, past and future medical expenses, physical pain, suffering, and disfigurement, mental anguish, diminished enjoyment of life, and other damages.

## COUNT I –STRICT PRODUCTS LIABILITY

50.    Plaintiff incorporates the foregoing allegations as if fully restated herein.

11

51.    At the time of Plaintiff's injuries, Defendant Future Motion designed, developed, manufactured, produced, distributed, marketed, and sold the Onewheel+ XR at issue in this case.

52.    Defendant Future Motion designed, developed, manufactured, produced, distributed, marketed, and sold the Onewheels with actual or constructive knowledge that they would be purchased and used by members of the general public, such as Plaintiff.

53.    The subject Onewheel was expected to and did reach Plaintiff without undergoing any substantial changes or alterations.

54.    From the time the subject Onewheel left the control of defendant until the time of the incident, it did not undergo any substantial changes or alterations.

55.    At the time it was designed, developed, manufactured, produced, distributed, marketed, and sold by Defendant, the subject Onewheel was defective in its design, manufacture and/or warnings and was unreasonably dangerous for its foreseeable uses, such as Plaintiff's use.

56.    At the time it was designed, developed, manufactured, produced, distributed, marketed, and sold by Defendant, the subject Onewheel was defective in its design, manufacture and/or warnings for one or more of the following reasons:

(a)    The Onewheels designed, manufactured, sold, and supplied by Defendant were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

12

(b)    The seriousness and risk of severe injuries and death resulting from the product drastically outweigh any benefit that could be derived from the Onewheel's normal, intended use;

(c)    Defendant failed to properly market, design, manufacture, distribute, supply, and sell the Onewheels, despite having extensive knowledge that the aforementioned injuries could and did occur;

(d)    Defendant failed to warn and place adequate warnings and instructions on the Onewheels;

(e)    Defendant failed to adequately test the Onewheels;

(f)    Defendant failed to issue a timely recall and/or stop the sale of its Onewheels after discovery of these serious and deadly defects; and

(g)    Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff's injuries and damages.

57.    The risk of potential and serious injuries resulting from the Onewheels suddenly and unexpectedly coming to an abrupt halt during the normal, directed use of the Onewheel is not an open and obvious risk, and it is not a risk that is a matter of common knowledge.

58.    Plaintiff did not know at the time of his use of the Onewheel, or at any time prior thereto, of the existence of the defects in the product.

59.    The unreasonable dangers associated with the foreseeable uses of the subject Onewheel exceed those that the ordinary user or consumer would anticipate, and the risk of harm stemming from its manufacture could have been reduced or

13

avoided entirely had the Onewheel not deviated from its design specifications, formulas, and/or performance standards.

60. The unreasonable dangers associated with the uses of the subject Onewheel outweigh its utility, and the foreseeable risk of harm regarding its design could have been reduced or avoided entirely by the incorporation of feasible, alternative designs.

61. The unreasonable dangers associated with the uses of the subject Onewheel outweigh its utility, and the foreseeable risk of harm posed by it could have been reduced or avoided had adequate warnings, instructions for use and information been provided with the product.

62. As a direct and proximate result of the above-noted defect(s) of the subject Onewheel, Plaintiff sustained debilitating injuries, medical expenses, economic damages, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

63. Defendant Future Motion's actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

64. Despite the fact that Defendant knew or should have known of the aforementioned defects and the risks posed to consumers, Defendant continued to market its Onewheels to the general public (and continues to do so).

65.    Defendant's conduct, as described above, was extreme and outrageous. Defendant risked the safety and well-being of the consumers and users of its Onewheels, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, recall, issue a stop sale, warn or inform the unsuspecting consuming public.

## COUNT II – NEGLIGENCE

66.    Plaintiff incorporates the foregoing allegations as if fully restated herein.

67.    Defendant had a duty of reasonable care to design, manufacture, market, inspect, distribute, and sell non-defective products that are reasonably safe for their intended uses by consumers, such as Plaintiff.

68.    Defendant failed to exercise ordinary care in the manufacture, warnings, quality assurance, quality control, distribution, advertising, promotion, sale, and marketing of its Onewheels in that Defendant knew or should have known that said Onewheels created a high risk of unreasonable harm to the Plaintiff and consumers alike.

69.    Defendant was negligent in the design, manufacture, advertising, warning, marketing, and sale of its Onewheels in that, among other things, it:

15

(a)    Failed to use due care in designing, manufacturing, warnings, quality assurance, quality control, distribution, advertising, promotion, marketing, and sale of the Onewheels to avoid the aforementioned risks to individuals;

(b)    Placed an unsafe product into the stream of commerce; and

(c)    Was otherwise careless or negligent.

70.    The subject Onewheel was expected to, and did, reach Plaintiff without undergoing any substantial changes or alterations.

71.    Plaintiff did not know at the time of his use of the Onewheel, nor at any time prior thereto, of the existence of the defects in the product.

72.    The unreasonable dangers associated with the foreseeable uses of the subject Onewheel exceed those that the ordinary user or consumer would anticipate, and the risk of harm stemming from its manufacture could have been reduced or avoided entirely had the subject Onewheel not deviated from its design specifications, formulas, and/or performance standards.

73.    The unreasonable dangers associated with the uses of the subject Onewheel outweigh its utility, and the foreseeable risk of harm regarding its design could have been reduced or avoided entirely by the incorporation of feasible, alternative designs.

74.    The unreasonable dangers associated with the uses of the subject Onewheel outweigh its utility, and the foreseeable risk of harm posed by it could

have been reduced or avoided had adequate warnings, instructions for use and information been provided with the product.

75.    As a direct and proximate result of the above-noted defect(s) of the subject Onewheel, Plaintiff sustained debilitating injuries, medical expenses, economic damages, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

76.    Defendant Future Motion's actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

77.    Despite the fact that Defendant knew or should have known of the aforementioned defects and the risks posed to consumers, Defendant continued to market its Onewheels to the general public (and continues to do so).

78.    Defendant's conduct, as described above, was extreme and outrageous. Defendant risked the safety and well-being of the consumers and users of its Onewheels, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, recall, issue a stop sale, warn or inform the unsuspecting consuming public.

### COUNT III– PUNITIVE DAMAGES

79.    Plaintiff incorporates the foregoing allegations as if fully restated herein.

80.    Mr. Aldridge's claim or a portion of his claim arises out of Montana Code Annotated § 27-1-221.

81.    Future Motion's manufacture, marketing, and sales of its Onewheels showed a callous disregard for Mr. Aldridge's safety and wellbeing and constituted actual malice.

82.    Future Motion had knowledge that its Onewheels created a high probability of injury to Plaintiff.

83.    Future Motion had knowledge of facts or intentionally disregarded facts that showed its Onewheels created a high probability of injury to Plaintiff

84.    Future Motion acted with conscious or intentional disregard of the high probability of injury to the Plaintiff or acted with indifference as to the high probability of injury to the Plaintiff as a result of its acts or omissions.

85.    As such, Mr. Aldridge is entitled to an award of punitive damages in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

1.    For all general damages, including pain, suffering, and disfigurement, loss of course of life, and emotional distress damages;

2.    All special damages, including but not limited to past and future medical expenses;

18

3.    For pre-judgment and post-judgment interest as permitted by law;

4.    Costs of suit and attorney fees as allowed by law;

5.    Punitive Damages as allowed by Mont. Code Ann. §§ 27-1-220 to -221.

6.    Any other relief allowable by law that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues so triable.

DATED this 2nd day of April, 2025.

MCFARLAND MOLLOY & DUERK

By: _____

Dylan M. McFarland
Attorney for Plaintiff

19